UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  S1-4:13CR0391 JAR/TIA |
| ) | |
| WALTER COMBS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b).  The Defendant filed a motion to suppress statements, and the I Government filed a response thereto.   Based upon the evidence adduced and the briefing on the motion to dismiss, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Eugene Neal is a lieutenant and supervisor of the Jennings City Jail in Jennings, Missouri.  His job is to supervise the jail facility and the federal inmates in the facility.  He is specifically in charge of maintaining the safety of the inmates and staff of the facility.

On May 20, 2014, he received a radio call from Sergeant Forti informing him that there was a fight going on in the day room at his facility.  He immediately responded to this call, and observed Forti with an individual who identified as Kevin Nailor.  He observed that Nailor had a puffy face, and appeared to have been in an altercation.  Further, Forti told him that there were three individuals involved in the fight.  Lieutenant Neal escorted Nailor to a more private area of the facility and talked to him about the fight.  Nailor would not tell him who was involved in the dispute or what it was

about, and just repeated the name "Big Country" to him. After Nailor was less than cooperative with Neal, he reviewed the video-tapes of the day room to determine who the other two individuals were involved in the fight. He determined the other two individuals were Shatondi Rice and the Defendant Walter Combs. He also determined that "Big Country" was neither Rice nor Combs.

Neal next asked the other officers to send Shatondi Rice from the day room to see him in a more private area of the facility. When Rice arrived, and was asked about the confrontation, Rice refused to talk to Neal, and was sent to his jail cell. Next, Neal requested that Walter Combs be sent from the day room to talk to him. When Combs arrived, he talked to Combs in the booking area for federal prisoners. Combs was not handcuffed, nor was he threatened, intimidated, physically restrained or abused in any way. The discussion with Combs was quite "calm". Further, although the discussion took place in a relatively confined area it was best described by the other officers as being in a "hallway". The purpose of questioning Combs, Rice and Nailor, was to determine what caused the fight, to determine if there was some type of deep seeded animosity between the inmates and if they needed to be locked down or separated. Conversely, the matter may just have been a fight over the commissary or food, which could have been handled quickly and informally. The inquiry thus was not to investigate a crime, but just to determine for administrative purposes and safety reasons what should be done in the jail facility. The only question asked of the Defendant was something to the effect of "what's the problem?" Neal said he was just trying to get to the bottom of what caused the fight and resolve the problem. Neal had absolutely no intention of referring the matter for prosecution. In response to Neal's question Defendant stated "we are on the same case- he's a snitch".

In stating why Combs was not given his Miranda rights before Neal talked to him Neal stated as follows "No I didn't advise him. My whole purpose of questioning him was basically to get to the bottom of what happened for my safety, my staff's safety, as well as the safety of the inmates and find out if I can resolve the problem. And if I was able to resolve it I had resolved it, but at that time when it was made apparent that there was more of an issue here with the three that's when they were all placed on lock-down and the request for movement was made to the Marshal's."

After determining that there was an issue based on what Combs told Neal, he instructed Sergeant Forti to return Combs to his jail cell and place him on lock-down. When Forti was returning the Defendant to the cell, Defendant stopped to talk to another prisoner. Forti heard Combs tell the other prisoner "He's a snitch".

### Discussion

Defendant alleges that the statement to the lieutenant should be suppressed because he was not advised of his Miranda rights prior to the statement. He essentially argues that, because he was locked up on his current charges, he was "in custody" for purposes of being given his Miranda warnings. He further alleges that the statement was not voluntarily made by him.

The undersigned concludes, however, that based on the totality of the circumstances, the Defendant was not in custody for purposes of Miranda and the statement was, without question, voluntarily made. In this regard, both The Eighth Circuit Court of Appeals and the United States Supreme Court have both held that the "mere fact of incarceration" does not render an interrogation custodial and, therefore, Miranda warnings are not automatically required when an inmate is

3

questioned.  See United States v. Chamberlain, 163 F.3d 499 (8th Cir. 1998); Levison v. Black, 843 F.2d 302 (8th Cir. 1998);  Howes v. Fields, 132 U.S.C. 1181 (2012).

While there appears to be no similar case in this circuit, several cases from other circuits discuss "in custody" requirement under similar circumstances.  In Wilson v. Cain, 641 F.3d 96 (5th Cir. 2011), defendant was involved in a fight with another inmate in a Louisiana penitentiary.  The two prisoners who were observed to be fighting, were restrained by prison officers and handcuffed. They were taken to separate rooms for what was testified to as a "post-fight interview" of each inmate.  This was an administrative procedure done for the purpose of securing the area and determining what needed to be done to ensure the orderly operation of the institution.  The prison officer testified that the defendant was not "arrested" but just restrained for safety purposes.  This is done because fights between inmates are not uncommon and, in fact, happen on a regular basis. During the post-fight interview, the defendant made admissions about another inmate in another area of the prison who he had beaten badly.  He was eventually charged with a second beating, convicted, and sentenced to a significant sentence.  In holding that defendant was not in custody for purposes of Miranda, the Court adopted a four-factor test approved by the Ninth and Fourth Circuits.  These circuits require some additional restrictions or coercion,  more than mere incarceration, before a person must be given Miranda warnings. The four factors which they analyze are (1) the language used to summon the individual, (2) the physical surroundings of the interrogation, (3) the extent to which the prison officials confront the individual with evidence of guilt, and (4) whether the officials exerted any additional pressure to detain the individual.  See United States v. Conley, 779 F.2d 970 (4th Cir. 1985); Cervantes v. Walker, 589  F.2d 424 (9th Cir. 1978).  In finding that the defendants were not in custody, even though interrogated in handcuffs and in a small room, the Court stated as

4

follows, "in sum because the questioning was conducted by members of the prison staff, using the prison's routine immediate 'post-fight procedure' to ensure the safety of the general population, it was not objectively unreasonable for the state court to conclude that this was more like general on-the-scene questioning (see <u>Miranda</u>, 86 U.S.C. 1629) rather than a custodial interrogation of the type addressed by the Supreme Court in <u>Mathis and Schatzer</u>." <u>Wilson v. Cain</u>, 641 F.3d 96, 104.

In <u>United States v. Scaif</u>, 725 F.2d 1272 (10th Cir. 1984), the defendant was a prisoner at El Reno Federal Correctional Center. Shortly after being allowed to leave his cell he was observed to attack and inflict multiple stab wounds on another inmate. He was subdued and returned to his cell and shortly thereafter two correctional officers came to his cell and asked him, "what was going on, what the problem was." He made incriminating statements about the stabbing and location of the homemade knife. In holding that Miranda warnings not be given, the Court held that the conversation was nothing more than an "on-the-scene" inquiry to find out what had happened, to determine who had been injured and the kind of weapons used in the attack; all of which was done in conjunction with the officers' security responsibilities at the correctional institution. The Court held that on-the-scene questions do not require Miranda warnings. <u>Scaif</u>, id. at 1276.

Applying the above principles to the current case, the undersigned concludes that Miranda warnings need not have been given. In the case now at bar, the Defendant was not detained in a manner in excess of what he would have been in a normal prison situation. He was involved in an altercation at the facility and he, along with the other individuals involved in the altercation, were brought to an area where the shift lieutenant could determine what had occurred. The lieutenant stated that he had absolutely no intention of prosecuting anyone for any violation and just wanted to find out if there were any deep seeded problems between the Defendant and his cohorts to determine whether

they should be separated. They were not restrained other than being escorted to the area where they were interviewed, and were interviewed only by the lieutenant. This interview was described as taking place "in a hallway". This is very close to the on-the-scene interviews described in the above cases. In addition, the Defendant was not threatened in any way nor was he intimidated. He was only asked, "What's the problem?". The lieutenant was not aware that the Defendant and the other individuals were on the same case or that they had been arrested together. The lieutenant wished to determine administratively what he needed to do for the safety of the jail. Thus, because the lieutenant's duties were administrative; defendants were not handcuffed or otherwise physically restrained during the interview; the interview took place in a hallway; and because the Defendant was not threatened in any way, the undersigned concludes that Miranda warnings need not have been given. For the same reason, the Court concludes that the statement was voluntary.

In addition, the undersigned notes that Defendant's statement was repeated on his way back to the jail cell; not in response to any question, but was a volunteered statement made by him to a third party overheard by the guard. This statement would not be suppressible even if Miranda warnings should have been given or the Defendant's attorney should have been notified. Any error or problem caused by the introduction of the initial statement would likely be rendered harmless by the fact that the Defendant uttered a non-suppressible statement just minutes later. Therefore, the statement should not be suppressed. See Rhode Island v. Innis, 446 U.S. 291 (1980).

Combs' Sixth Amendment Rights. As stated above, Combs was not questioned about any criminal activity in which he may have been involved. He was merely asked, "what's the problem". After he responded, he was not again questioned. Further, he was not questioned in any way about the offense with which he was charged at the time. Based on the above facts, the undersigned

6

concludes that the Defendant's sixth amendment rights were not violated.  Sixth amendment rights are "offense specific".  The fact that Defendant may have a lawyer for a past crime does not mean that this attaches to all future activity.  See McNeal v. Wisconsin, 501 U.S. 171 (1991); Scarberry v. State, 430 F.3d 956 (8th Cir. 2006).  The crime of obstruction of justice is alleged to have occurred long after the original offense and, therefore, the Defendant was not deprived of his right to counsel by Lieutenant Neal's single question.

In addition, as stated above, any error would be harmless because the Defendant volunteered exactly the same statement shortly after he made the statement to Lieutenant Neal.  Therefore, Defendant was not deprived of his sixth amendment rights and the statement should not be suppressed on this ground.

## Conclusion

Therefore, the undersigned concludes that

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the  Motion to Suppress Statements  [Doc. 136] be **denied**.

Further, the parties are advised that they have fourteen (14) days, in which to file written objections to this recommendation and determination.  Failure to timely file objections may result in waiver of the right to appeal questions of fact.  Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

       /s/ Terry I. Adelman  
UNITED STATES MAGISTRATE JUDGE

Dated this   23rd   day of September, 2014.